UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| AMBER LAVIGNE<br><br>Plaintiff<br><br>v.<br><br>GREAT SALT BAY COMMUNITY SCHOOL BOARD, SAMUEL ROY, JESSICA BERK, KIM SCHAFF AND LYNSEY JOHNSTON<br><br>Defendants | Case No. 2:23-CV-00158-JDL |

### DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM

### MOTION

Defendants Great Salt Bay Community School Board, Samuel Roy, Jessica Berk, Kim Schaff, and Lynsey Johnston (collectively the "School") hereby move to dismiss the Complaint (ECF No. 1) under Rule 12 (b)(6) of the Federal Rules of Civil Procedure. The reason for this motion, as set forth more fully below, is that Plaintiff has failed to plausibly plead a claim for which relief can be granted.

### INCORPORATED MEMORANDUM OF LAW

### INTRODUCTION

In this case, Plaintiff Amber Lavigne claims that she has a fundamental right to be provided with information about non-medical gender affirming care and support provided to her child in school. She claims that the School failed to notify her of steps it was taking to support her child and that, in so doing, it violated her constitutional rights to substantive and procedural due process.

1

The problems with Plaintiff's claims—even accepting all of the well-pled facts contained in the Complaint as true—are two-fold.  First, the policy on which she bases her claims simply does not say what Plaintiff says it does.  In fact, far from requiring concealment of information from parents, the School's Transgender Student Guidelines ("Guidelines") provide for parental involvement at every step of the way.  Second, the very premise of Plaintiff's claims—that the Constitution requires a school to keep parents up to speed on how their children are navigating their sexual identity at school—is not accurate.   Plaintiff's complaint should therefore be dismissed.

## STANDARD OF REVIEW

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must set forth facts sufficient to state a legal claim on which relief could be granted."  *Giragosian v. Bettencourt*, 614 F.3d 25, 28-29 (1st Cir. 2010).  In evaluating the sufficiency of the Complaint, this Court must first separate the Complaint's factual allegations, which are taken as true, from its conclusory legal allegations, which need not be credited.  *See, e.g.*, *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 514 (1st Cir. 2016); *see also Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (explaining that a court "need not credit a plaintiff's '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'").  "[W]hether the well-pleaded facts, taken in their entirety, permit 'the reasonable inference that the defendant is liable for the misconduct alleged,'" *Guadalupe-Báez*, 819 F.3d at 514, is a higher standard than a "probability requirement,'" demanding more than an unadorned, the-defendant-unlawfully-harmed-me accusation,'" *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 70 (1st Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Dismissal is therefore proper when, as here, "the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture.'"  *Alston*, 988 F.3d at 571.

# STATEMENT OF FACTS

The facts of this case are very much in dispute. However, the School is cognizant of the fact that, for the purposes of this motion to dismiss, the Court is required to accept the well-pleaded facts of the Complaint and incorporated exhibits as true. *See Trans-Spec Truck Service, Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008). Those facts are as follows.

## A. The School's Policies and Practices Regarding Transgender Students

The Great Salt Bay Community School ("Great Salt Bay") has adopted Transgender Student Guidelines that are intended to (1) "foster a learning environment that is safe, and free from discrimination, harassment and bullying," and (2) "assist in the educational and social integration of transgender students in our school." GSB Community School Transgender Student Guidelines Policy Code JB, Complaint Exhibit 6 (ECF No. 1-6) ("Guidelines") at 1, PageID # 29. In furtherance of these goals, the Guidelines establish a procedure by which the School will address needs raised by the transgender student, their parent(s)/guardians(s), or both. That procedure requires involvement by both the student and their parent(s)/guardian(s) at every step of the way. Thus, the process begins with contact by the student and/or their parent(s)/guardian(s) to a building administrator or guidance counselor, followed by the scheduling of a meeting to discuss the student's circumstances and needs. *Id*. at 2, PageID # 30. Although the Guidelines leave open the possibility that any number of people who may be helpful will attend this meeting, they require the following participants: (1) a building administrator; (2) the student; and (3) the student's parent(s)/guardian(s). *Id*. Following that meeting, the Guidelines provide for a plan that "should be developed by the school in consultation with the student, parent(s)/guardian(s) and others as appropriate." *Id*. In other words, contrary to Plaintiff's allegations, the Guidelines specifically provide for parental involvement, rather than parental exclusion, in development of a plan.

The Guidelines also provide guidance on eight specific issues, three of which bear particular mention here. First, the Guidelines address the important issue of privacy, stating that the student's plan "should address how to deal with disclosures that the student is transgender," acknowledging that "[i]n some cases, a student may want school staff and students to know, and in other cases the student may not want this information to be widely known." *Id*. at 3, Page ID # 31. It advises that "school staff should take care to follow the student's plan and not to inadvertently disclose information that is intended to be kept private or that is protected from disclosure." *Id*. Importantly, however, under the plain language of the Guidelines, these confidentiality requirements are limited to school students and staff, not parents. There is nothing either stated or implied in the Guidelines that suggest that information should be kept from parents. Second, the Guidelines state that a student "who has been identified as transgender under these guidelines should be addressed by school staff and other students by the name and pronoun corresponding to their gender identity that is consistently asserted at school." *Id*. Third, the Guidelines emphasize the importance of student safety, stating that "[s]chool staff are expected to comply with any plan developed for a transgender student and [should] notify the building administrator or other designated support person for the student if there are concerns about the plan, or about the student's safety or welfare." *Id*. at 4, Page ID # 32. The Guidelines add in this regard that school staff "should be sensitive to the fact that transgender and transitioning students may be at higher risk for being bullied or harassed, and should immediately notify the appropriate administrator if he/she becomes aware of the problem." *Id*.

### B. Plaintiff's Child

Plaintiff's minor child ("Student") attended Great Salt Bay, and Plaintiff was generally pleased with the education the Student was receiving there. Complaint ¶¶ 16, 18. Plaintiff alleges

4

that in December 2022 she found a chest binder[1] while she was cleaning the Student's room and was told by the Student that it had been given to them by Defendant Samuel Roy, a social worker at Great Salt Bay. *Id.* ¶ 20.  Plaintiff further alleges that she is "informed and believes" that Mr. Roy gave the Student a second chest binder, and also that he was not going to tell the Student's parents about the chest binder. *Id.* ¶ 22.  There is no allegation in the Complaint concerning who gave Plaintiff this information or why she believes it to be true.

Plaintiff next alleges that, after she found the chest binder, she also discovered that, while at school, the Student was called by a name and pronoun not associated with their biological sex, something she alleges she had not been informed of before. *Id.* ¶ 26.  She alleges that Defendants Roy and Berk chose, at Student's request, to honor the student's wishes in this regard and that other officials at the school did so thereafter. *Id.* ¶ 28.  Plaintiff claims that no one at the School informed her of the Student's name and pronoun change at school, and implies that, as a result, she was completely unaware of this.

As a result of what Plaintiff characterizes as the School's alleged "concealing of crucially important and intimate psychosexual information about her minor child," she withdrew the Student from Great Salt Bay and began to home school them. *Id.* ¶ 35.

## ARGUMENT

### I. The Claims Against the Individuals in their "Official Capacity" Should Be Dismissed as Redundant.

As an initial matter, in addition to suing the Great Salt Bay Community School District, Plaintiff has also sued five individual employees of the District in their official capacities only. "Official capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an [employee] is an agent,'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)

---

[1] Plaintiff concedes that a chest binder is not a medical devise.  Complaint ¶ 24.

(quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.5 (1978)). The Plaintiff's claims are therefore all claims against the Great Salt Bay Community School District, and all claims against the individual defendants should be dismissed as superfluous. S*ee, e.g.*, *Trafford v. City of Westbrook*, 256 F.R.D. 31, 33 (D. Me. 2009) (dismissing official capacity claims against municipal employees because "an official capacity claim is not necessary when a Section 1983 claim is brought against a municipality because, under *Monell*, local governmental units can be sued for damages or declaratory and injunctive relief").

**II.     Plaintiff has Failed to Plead a Cognizable Claim for Municipal Liability Under *Monell*.**

The gist of Plaintiff's claim in this case is that the School withheld information from her about the Student's sexual identity in violation of her substantive and procedural due process rights. She has thus asserted four claims of institutional liability against the School under 42 U.S.C. § 1983. The issues raised by Plaintiff are similar to those being tested in courts across the country, including in *Foote v. Town of Ludlow*, No. 22-30041, 2022 WL 18356421 (D. Mass. Dec. 14, 2022), *appeal docketed*, No. 23-1069 (1st Cir. Jan. 17, 2023), which is currently pending before the First Circuit Court of Appeals. There, the plaintiffs are parents who, like Plaintiff here, complained that their rights had been violated because their child's school did not share information concerning their child's name and pronoun use at school. The District Court dismissed the complaint. Other courts have reached the same conclusion under similar facts. *See, e.g.*, *Vesely v. Ill. Sch. Dist. 45*, -- F.Supp.3d --, 2023 WL 2988833, at *5 (concluding that school's gender affirming policy did not violate parents' fundamental rights); *Regino v. Staley*, No. 2:23-cv-00032, 2023 WL 2432920, at *1, *3-4 (E.D. Cal. March 8, 2023) (denying parents' request for a preliminary injunction of a school policy that prohibits school personnel from informing parents

of students' gender identity without students' consent because there was no legal authority that the state has an affirmative duty to inform parents of their child's transgender identity).

This Court, however, need not even reach the underlying constitutional issues because Plaintiff has failed to plausibly plead a basis for municipal liability under *Monell* and its progeny. As noted above, Plaintiff has only pled claims for institutional liability and thus, the Defendants can be liable under section 1983 "only if municipal employees commit unconstitutional acts *and* those actions are shown to have been caused by a 'policy or custom' of the government, *Est. of Bennett v. Wainwright*, 548 F.3d 155, 157 (1st Cir. 2008) (emphasis supplied); *see Monell*, 436 at 694. A governmental entity is responsible only "when the execution of the government's policy or custom inflicts the injury," and "Plaintiff must point to a policy, not a violation of a policy, as the source of the constitutional violation." *Berry*, 2016 WL 742901, at *17 (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)) (alterations omitted).

To be sure, Plaintiff's complaint in this case is rife with general allegations that the District has a "policy, pattern, and practice of withholding and concealing" information from parents. *See, e.g.*, Complaint ¶¶ 4, 35. However, "assertions nominally cast in factual terms but so general and conclusory as to amount merely to an assertion that unspecified facts exist to conform to the legal blueprint" are insufficient at the pleading stage. *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44-45 (1st Cir. 2012) (explaining that an assertion upon information and belief signifies that allegations are based on secondhand information believed to be true and noting that, if the plaintiff has the facts to support such an assertion, those facts should be set forth).

Further, "[i]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Yacubian v. United States*, 750 F.3d 100, 108 (1st Cir. 2014) (quoting *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 229 n.1 (1st Cir. 2013)). Here, the Complaint references and attaches two written policies, the

7

Guidelines and a Staff Conduct with Students policy, both of which directly contradict Plaintiff's allegation that the District has a policy of hiding information from parents. The Staff Conduct with Students Policy *prohibits* staff from encouraging students to keep secrets, *see* GSB CSD Policy-Staff Conduct with Students¸ Complaint Exhibit 7 (ECF No. 1-7) at 1, Page ID # 34, and the Guidelines provide for parental involvement through every step of the School's support plans for transgender students. Faced with unambiguous written policies that provide for parental involvement, Plaintiff's protestations that the School had a policy of withholding information must be rejected. *See John and Jane Parents 1 v. Montgomery Cnty. Bd. Of Educ.*, -- F.Supp.3d --, 2022 WL 3544246, at *6-7 (S.D. Md. Aug. 18, 2022) (determining that the plain language of a school's transgender guidelines did not support the plaintiffs' "distorted" contention that the guidelines encouraged children to withhold information from parents about their gender identity and thus considering whether a parent has a fundamental right to be informed of their child's gender identity).

This Court should likewise ignore Plaintiff's conclusory legal assertions of "failure to train" and "ratification." Although a municipal entity can be liable for constitutional violations arising from a failure to train, Plaintiff's assertions that employees did not disclose information about her child fail to identify any failure to train resulting in an injury therefrom. As an initial matter, "referring to a person by their preferred name and pronouns . . . requires no special training or skill." *Foote*, 2022 WL 18356421, at *5 ("[A]ddressing a person using their preferred name and pronouns simply accords the person the basic level of respect expected in a civil society generally."). Further, a municipality can only be liable based on a failure to train theory if the alleged failure to train demonstrates a deliberate indifference toward citizen rights. *See City of Canton v. Harris*, 489 U.S. 378, 389 (U.S. 1989). Such deliberate difference exists if the failure to train occurred in spite of "an obvious likelihood that inadequate training will result in the

violation of constitutional rights," *Whitfield v. Melendez-Rivera*, 431 F.3d 1, 10 (1st Cir. 2005), which generally requires showing a pattern of similar violations, *see Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011). Here, Plaintiff has not alleged a pattern of withholding information from parents; Plaintiff alleges that information was withheld only with regard to her child.

Finally, this Court should similarly ignore Plaintiff's mere conclusory assertion that the School Board somehow "ratified" employee conduct. "Although a municipality may be subject to liability in instances where it ratifies the conduct of an employee without policymaking authority, a showing of ratification requires that the authorized policymakers approve a subordinate's decision and the basis for it." *Craig v. Me. Sch. Admin. Dist. No. 5.*, 350 F.Supp.2d 294, 297 (D. Me. 2004). Here, Plaintiff does not allege that any policymakers approved the alleged constitutional violations, and Plaintiff has failed to plead liability based on ratification.

In short, at best, what Plaintiff has pled here is that certain employees of the School violated its policies. Those allegations—even if true—are simply insufficient to give rise to liability under *Monell*, and Plaintiff's Complaint should therefore be dismissed.

### III. The Complaint Fails to State a Claim Against the Great Salt Bay School Board for Violation of Plaintiff's Substantive Due Process Rights.

Even assuming that Plaintiff has adequately pled the existence of a policy or practice that is contrary to the Guidelines, her Complaint must still be dismissed. Plaintiff asserts in Counts 1, 2 and 3 that the concealment of the Student's preferred pronouns and the distribution of a chest binder to the Student infringed on her "right to control and direct the care, custody, education, upbringing and healthcare decisions of her children," and that an unwritten and amorphous policy likewise infringes on that right because it allows the school "to adopt procedures for the treatment of transgender students without consultation of, and while withholding or concealing information from, parents." Complaint ¶¶ 62-84.

Substantive due process "protect[s] individuals from particularly offensive actions on the part of government officials." *Freeman v. Town of Hudson*, 714 F.3d 29, 40 (1st Cir. 2013). "An abuse of power practiced by the executive branch of state government, which includes Maine School boards and school officials, sinks to a level cognizable under the Due Process Clause only when it is so extreme and egregious as to shock the contemporary conscience." *Fortuna*, 607 F.Supp.3d 29, 51 (D. Me. 2022) (*DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005)). It is only if this Court determines that the conduct was conscious-shocking that it will examine whether Plaintiff's constitutional right was violated. *DePoutot*, 424 F.3d at 118.

i. <u>The Alleged Behavior of the School Employees is not Conscious-Shocking</u>

"Executive acts that shock the conscience must be "truly outrageous, uncivilized, and intolerable, and the requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error," bad faith, or mere violations of state law. *Harron v. Town of Franklin*, 660 F.3d 531, 536 (1st Cir. 2011) (quotation marks and citations omitted). Even the deliberate indifference alleged by Plaintiff requires conscious disregard of known consequences, and such indifference is not per se conscious shocking. Indeed, "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another" environment, *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998), and the determination of deliberately indifferent and conscious shocking behavior is therefore context-specific, *Ramos v. Pinero v. Puerto Rico*, 453 F.3d 48, 53 (1st Cir. 2006). "[C]onduct intended to injure in some way unjustifiable by any governmental interest is the sort of official action most likely to rise to the conscience-shocking level," *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998), and "the nature of the right violated" alongside the "government's competing interests" inform whether behavior meets the level of culpability required for a violation of substantive due process, *Martinez v. Cui*, 608 F.3d 54, 66 (1st Cir. 2010).

Here, the school's competing and justifiable government interests establish unequivocally that the School's implementation of the Guidelines and the employees' alleged decision not to disclose private information to Plaintiff are not conscious-shocking. The School is obligated to comply with both federal and state anti-discrimination laws. Among them are the Equal Protection clauses of the Federal and Maine Constitutions, *see* U.S. Const. amend XIV, § 1; Me. Const. art I, § 6-A, Title IX of the Education Amendments of 1972, *see* 20 U.S.C. § 1681 (prohibiting bias on the basis of sex, sexual orientation, and gender identity), the Maine Human Rights Act (MHRA), *see* 5 M.R.S. § 4601 (establishing the right to be free from discrimination in education, including from discrimination on the basis of gender identity), and the Maine Civil Rights Act, *see* 5 M.R.S. § 4684-A (prohibiting bias based on gender and sexual orientation); *see also Doe v. Regional Sch. Unit 26*, 2014 ME 11, 86 A.3d 600 (holding that a school was liable under the MHRA for discrimination against a transgender student based on the student's sexual orientation).

The School also has an obligation to respect student's rights. One of those rights is the rights of "[a]ll students . . . to attend public schools that are safe, secure and peaceful environments." 20-A M.R.S. § 6554(1). Related to this right is the school's state law obligation to protect against bullying, which the Maine Legislature has cautioned may be motivated by, among other personal characteristics, the student's sexual orientation, gender, gender identity, and physical appearance. *Id*. Not mutually exclusive from a student's right to a safe environment is the students' rights to a confidential counseling relationship with a school counselor, *see* 20-A M.R.S. § 4008, and the students' rights to express themselves in school, 20-A M.R.S. § 6554(1); *Tinker v. Des Moines Ind. Comm. Sch. Dist*., 393 U.S. 503, 506 (1969). To that end, Plaintiff acknowledges that "gender identification" is a "vitally important and intimate psychological matter, central to an individual's personality and self-image, and a crucial element in how people relate to the world." Complaint ¶ 25.

11

Plaintiff's substantive due process argument fails to acknowledge these countervailing rights of students, which are implicated by the school's decision to inform a parent—or anyone—of a person's gender identity. Indeed, the right to parent is a sub-set of the right to familial privacy, *see Parker v. Hurley*, 514 F.3d 87, 102 (1st Cir. 2008), and student privacy is at the heart of a decision to disclose such information. The decision to seek parental guidance is the student's own decision to make, and that remains true whether the topic touches on the student's personal identity or the student's decisions about their body, *see Doe v. Irwin*, 615 F.2d 1162, 1168 (6th Cir. 1980) (explaining that minors' constitutional right to privacy protects their right to use contraception).

In fact, a policy that compels disclosure of students' private information to parents regardless of the circumstance—which is the constitutional demand that Plaintiff seeks—could implicate the due process rights of *students*. Schools could face liability if, for example, a school official disclosed a student's gender identity to a parent or guardian when the school had reason to know or disregarded the possibility that the parent or guardian's knowledge of those facts would create a danger to the student. *See Irish v. Fowler*, 979 F.3d 65 (1st Cir. 2020). Schools are faced not only with this legal concern, but importantly also with the very real safety concern that disclosure may pose to their students.

In light of these competing interests, it simply cannot be said that the School's actions as alleged in the complaint were conscious-shocking or even deliberately indifferent. The Guidelines direct school staff to "follow the student's plan" regarding disclosures that the student is transgender and do not compel students to withhold information from their parents. *See Foote v. Town of Ludlow*, No. 22-30041, 2022 WL 18356421 (D. Mass. Dec. 14, 2022) (holding that a school's policy to share information about the students' gender identity only with the students consent was not conscious shocking). The very stated justifiable interest of the Policy is fulfillment

of the school's state-law duty to "foster a learning environment that is safe, and free from discrimination, harassment and bullying."  Guidelines at 1, Page ID # 29.

Nor can any of the conduct alleged on the part of school employees be considered deliberately indifferent or conscious-shocking.  *See Littlejohn v. Sch. Bd. Of Leon Cnty. Fla.*, -- F.Supp.3d --, 2022 WL 18670372, at *8-9 (N.D. Fla. Dec. 22, 2022) (dismissing parents' substantive due process claim when allegations that school staff met with child regarding child's preferred name and pronouns and "wrongfully concealed" that information from parents did not establish conscious-shocking conduct).  There are no allegations that the student was compelled to identify by certain pronouns, nor are there any allegations that the student was obliged to use a chest binder.  *Cf. Grendell v. Gillway*, 974 F. Supp. 46, 49-51 (D. Me. 1997) (noting the particular "villainy" of the conscious-shocking tactics that a police officer used when he solicited incriminating information about the child's parents through deceit).  Because Plaintiff fails to allege any conduct that meets the requisite constitutional level of culpability, none of her substantive due process claims are cognizable.

   ii.   <u>Substantive Due Process Is Not Implicated by Plaintiff's Assertion of Rights</u>

Plaintiff's substantive due process challenges appear to rest on her contention that the School's policies and practices violate her substantive due process right because they do not impose an affirmative duty on school officials to notify parents of certain information.  The Due Process Clause, however, is not intended to regulate government inaction.  The Due Process Clause "is phrased as a limitation on the State's power to *act*," *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S 189, 195 (1989) (emphasis supplied), and its "purpose . . . is to protect people from the state, not to ensure that the state protects them from each other," *Rivera v. Rhode Island*, 403 F.3d 27, 34 (1st Cir. 2005).  "In a constitutional setting that distinguishes

13

sharply between action and inaction, one's characterization of the misconduct alleged under section 1983 may effectively decide the case." *DeShaney*, 489 U.S. at 204.

While state law requires school personnel to disclose certain information regarding students, the Due Process Clause does not otherwise impose such affirmative duties. *See Hasenfus v. LaJeunesse*, 175 F.3d 68, 72-73 (1st Cir. 1999) (no substantive due process obligation for school to take steps to prevent student's attempted suicide); *Doe v. Irwin*, 615 F.2d 1162, 1168 (6th Cir. 1980) (no deprivation of parents' liberty interests when parents were not notified of child's voluntary participation in county-operated birth control clinic because children have a right to privacy and the state has an interest in the welfare of its inhabitants).

Nor does Plaintiff have a fundamental right to direct how a school fulfills its state law obligation to create a safe learning environment for all students, *see Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) (explaining that "the state as parens patriae may restrict the parent's control" when "[a]cting to guard the general interest in youth's well being"). Although Plaintiff, like all parents, has a fundamental right to make decisions concerning the care custody, and control of her child, *see Troxel v. Granville*, 530 U.S. 57, 65-66 (2000), that right is "not absolute," *see Fortuna v. Town of Winslow*, 607 F. Supp. 3d 29, 46 (D. Me. 2022). "[T]he *Troxel* court did not address the extent of parents' rights to direct the policies of the public schools that their children attend." *Id.* (quoting *Parents for Priv. v. Barr*, 949 F.3d 1210, 1230-31 (9th Cir. 2020)). "Courts have long recognized that 'the state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare.'" *Id.* (quoting *Prince*, 321 U.S. at 167). In light of that "general power of the state to regulate education," it is a "well recognized proposition" that, "while parents can choose between public and private schools, they do not have a constitutional right to direct *how* a public school teaches their child." *Parker v. Hurley*, 514 F.3d 87, 102 (1st Cir. 2008)

(emphasis in original) (quotation marks omitted); *see also Brown v. Hot, Sexy & Safer Products, Inc.*, 68 F.3d 525, 533-34 (1st Cir. 1995).  Yet that is exactly what Plaintiff attempts to do here.

"Public schools often walk a tightrope between the many competing constitutional demands made by parents, students, teachers, and the schools' other constituents," *Parker*, 514 F.3d at 107, and Plaintiff's assertion that parents are entitled to be informed of information about their child's gender identity no matter the circumstance must be viewed in light of those competing constitutional demands.  Here, Plaintiff's rights "must be measured against" the right of *other parents* to have familial privacy and to have their children learn in a safe environment.  *See Fortuna*, 607 F.Supp.3d at 46 (determining that a school masking policy did not implicate the fundamental right to parent because that right must be measured against the equal rights of other parents).  In fact, one court was faced with circumstances wherein divorced parents with joint parental rights had different opinions on this issue, with the mother desiring that her child receive gender affirming treatment at school and the father opposing such treatment.  *See Vesely*, 2023 WL 2988833, at *1-2.  Concluding that the school's gender affirming policy did not violate the parents' fundamental rights, the District Court noted the way in which the circumstances of that case "aptly illustrate[] the impossibility of the [School] District fulfilling its educational mission while simultaneously accommodating the concerns of every parent." *Id.* at *5.

Likewise, Plaintiff's rights are constrained by the countervailing rights of students.  The very stated purpose of the Guidelines, which consider each particular students' needs on a case-by-case basis, advances the school's interest and duty to "foster a learning environment that is safe, and free from discrimination, harassment and bullying." Guidelines at 1, PageID # 29.  The constitutional mandate that Plaintiff seeks, which would require schools not only to report to parents on students' private information but also to monitor students such that the school can comply with such a constitutional duty, would threaten a school's ability to provide a safe learning

environment to all students, thereby infringing on the rights of students and other parents. If a student loses the ability to decide who knows their private information, that student may decide not to share or learn about their identity in school at all. Indeed, the unintended consequences of the constitutional duty that Plaintiff seeks to impose on schools are rife, and those consequences pose a threat to "a school board's most basic obligation . . . to create a stable environment for the education of its students." *Solmitz v. Maine Sch. Admin. Dist. No. 59*, 495 A.2d 812, 817 (Me. 1985).

The rights of other parents and students particularly weigh against Plaintiff's asserted right where, as here, nothing stops Plaintiff from the care and control of her child, including Plaintiff's ability to gain from her child the information that she seeks to know from the school. *See Jane Doe v. Manchester Sch. Dist.*, No. 216-2022-cv-00117 (N.H. Super. Ct. 2022) (determining that a transgender student policy did not implicate parent's fundamental rights when the policy did "not prevent parents from observing their children's behavior, moods, and activities; talking to their children; providing religious or other education to their children; choosing where their children live and go to school; obtaining medical care and counseling for their children; monitoring their children's communications on social media; choosing with whom their children may socialize; and deciding what their children may do in their free time."); *see also Irwin*, 615 F.2d at 1168 (county's voluntary birth control clinic did not interfere with rights of parents, who remained "free to exercise their traditional care, custody and control" over their children, including by participating in decisions of their children on issues of sexual activity).

The alleged policies and practices Plaintiff based her complaint upon do not violate her fundamental right to direct the care, custody, or upbringing of her child; in fact, here, Plaintiff ultimately chose to withdraw her child from Great Salt Bay and chose to homeschool the Student

instead. *See John and Jane Parents 1*, 2022 WL 3544256, at *7 (concluding parents have no fundamental right to be informed of their child's gender identity); *Vesely*, 2023 WL 2988833, at *3-5 (concluding that school policy of affirming a minor student's gender identity without parental consent did not implicate parent's fundamental right to parent); *see also Regino*, 2023 WL 2432920, at *1, *3-4.

Accordingly, Plaintiff cannot satisfy her burden to demonstrate that the alleged government infringement is not rationally related to a legitimate government purpose. *See, e.g.*, *Fortuna*, 607 F.Supp.3d at 51. The School has a legitimate and weighty interest in providing a safe learning environment for *all* students, which includes a safe learning environment for students' both physical and psychological well-being. *See New York v. Ferber*, 458 U.S. 747, 756-57 (1982) ("It is evident beyond the need for elaboration that a State's interest in safeguarding the physical and psychological well-being of a minor is *compelling*.") (emphasis supplied). In furtherance of that safe learning environment, the school likewise has an interest in protecting students' rights to privacy, to be free from discrimination and bullying, to express oneself, and to have a confidential conversation with a school counselor. The Transgender Guidelines undeniably bear a reasonable relation to these compelling interests. *See Vesely*, 2023 WL 2988833, at *4 (school's gender affirming policy "easily" cleared the rational basis hurdle because it had legitimate interests in maintaining a non-discriminatory environment for students and protecting students' privacy, mental well-being, and physical safety); *see also John and Jane Parents 1*, 2022 WL 3544256, at *13 (concluding that the school's transgender policy would satisfy strict scrutiny even assuming that parent's fundamental rights were infringed).

### IV.     **Plaintiff Fails to Plausibly Plead a Procedural Due Process Violation.**

Plaintiff alleges in Count 4 a violation of her right to Procedural Due Process because there is no mechanism by which she can participate in or comment on "the school's decision to provide

that parent's child[] with devices such as chest-binders, or to address his or her children by alternate names or pronouns." Complaint ¶ 91.  Plaintiff alleges that, instead, the school has an "across-the-board, blanket policy, pattern, or practice that applies to all cases regardless of specific circumstances." *Id*.  As an initial matter, this latter assertion is a conclusory allegation that is unsupported by the plain language of the Guidelines, which state that they are "not intended to anticipate every possible situation that may occur, since the needs of particular students and families differ depending on the student's age and other factors. . . . Administrators and school staff are expected to consider the needs of students on a case-by-case basis." Guidelines at 1, Page ID # 29.

The procedural due process analysis proceeds in two steps.  The first step "asks whether there exists a liberty or property interest which has been interfered with by the State." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 886 (1st Cir. 2010).  The second "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id*.  In considering the second question, the balancing of three factors determines what process is due: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  "[T]he quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 13 (1979).

Here, Plaintiff's claim fails at the first step because there has been no interference with Plaintiff's liberty interest.  Indeed, Plaintiff has no constitutionally protected right to be informed of her child's gender identity at school, nor does she have the constitutional right to direct the policies of public schools.  *See Regino*, 2023 WL 2432920, at \*1, \*3-4 (determining that Plaintiff

was unlikely to succeed on her procedural due process challenge to a policy that prohibited school personnel from informing parents, absent student consent, about a students' gender transition because plaintiff had failed to assert a constitutionally protected right). Even assuming there was an interference with Plaintiff's rights—which there was not—the Guidelines are constitutionally sufficient in light of the *Mathews* factors. Indeed, the Guidelines serve the weighty interest of the School in providing a safe educational environment, and they balance the private interests of all parents and students, including by involving parents and assessing the needs of each particular student on a case-by-case basis so as to minimize any possible deprivation of those private interests.

It bears noting in the context of procedural due process that Plaintiff, like all members of the public, is afforded a mechanism to comment on a schools' decisions through filing complaints or speaking at school board meetings, which Plaintiff alleges she did here. Further, Plaintiff's contention that she was "deprived of any opportunity to be a part of the decision-making process for the specific actions" of school personnel "in response to her child's gender identity" assumes that school personnel were making decisions for her child. This assumption finds support in none of Plaintiff's allegations, nor does it find support in the Guidelines, which permit the student to decide when, how and with whom to share information about their gender identity with the school population but include parents/guardians in the process from day one.

## CONCLUSION

For all of the foregoing reasons, this Court should dismiss Counts 1 through 4 of Plaintiff's Complaint with prejudice for failure to state a claim.

Dated: June 2, 2023               */s/ Melissa A. Hewey*
                                  Melissa A. Hewey
                                  Susan M. Weidner
                                  **DRUMMOND WOODSUM**
                                  84 Marginal Way, Suite 600
                                  Portland, Maine 04101-2480
                                  (207) 772-1941
                                  mhewey@dwmlaw.com
                                  sweidner@dwmlaw.com