IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| AMBER LAVIGNE,<br><br>    Plaintiff,<br><br>GREAT SALT BAY COMMUNITY SCHOOL BOARD; SAMUEL ROY, in his official capacity as a social worker for the Great Salt Bay Community School; JESSICA BERK, in her official capacity as a social worker at the Great Salt Bay Community School; KIM SCHAFF, in her official capacity as the principal at the Great Salt Bay Community School; LYNSEY JOHNSTON, in her official capacity as the Superintendent of Schools for Central Lincoln County School System,<br><br>    Defendants. | Case No. 2:23-cv-00158-JDL |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER RULE 12(b)(6)**

Plaintiff, by and through her attorneys of record, submits the following Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint.

**INTRODUCTION**

This case is about the Defendants policy of withholding and even concealing from parents information about actions the Defendants take with respect to children's mental and physical wellbeing—information crucial to a child's development, and which, as Defendants concede (Answer ¶ 25), any conscientious parent would desire to know. That policy of withholding, which consists of the Defendants' policy, custom, and practice—violates a parent's right to direct the care, custody, and upbringing of her child, a right the Supreme Court has deemed a fundamental constitutional right. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000).

1

This case is *not*, as Defendants claim, about a purported right of parents to be kept "up to speed on how their children are navigating their sexual identity at school." Mot. to Dismiss (MTD) (Doc. 12) at 2. Rather, this case is about the Defendants' policy of withholding particularly important information—and encouraging Plaintiff's child to withhold that information—a policy that deprives Plaintiff of her fundamental constitutional rights. A parent cannot meaningfully exercise her "fundamental liberty interest" in "'direct[ing] the upbringing and education of children under their control,'" *Troxel*, 530 U.S. at 65 (quoting *Pierce v. Society of Sisters*, 268 U.S. 510, 534–35 (1925)), if public schools follow a policy of actively withholding information about decisions to recognize a child's assertion of a different gender identity by the giving of chest binders—undergarments meant to compress breasts so the wearer appears male—and calling the child by a different name and pronouns. That is exactly what happened here—not by happenstance, but pursuant to Defendants' policy, custom, and practice.

Plaintiff does not contend that her constitutional right to control and direct the care, custody, and upbringing of her child extends to dictating a public school's internal operating procedures. *But it does* entitle her to be free of the *intentional withholding and even concealment* of information about the actions taken by school officials that directly affect her child's mental and physical well-being, particularly actions that relate to highly intimate matters regarding her child's psychosexual development. Compl. (Doc. 1) ¶ 25; Answer (Doc. 13) ¶ 25. Plaintiff's ability to discharge her "high duty" to promote and protect the best interests of her child, *Pierce,* 268 U.S. at 535—including, where appropriate, sending her child to a different school—is fatally undermined by Defendants policy of withholding and concealing information necessary for her to make such decisions. At least where (as here) there is no evidence of parental abuse, or risk of abuse, government officials should not withhold such vital information from parents.

Defendants' policy of withholding/concealment (hereafter "Withholding Policy") were not the acts of rogue officials, but rather acts pursuant to an official (though unwritten) policy, practice, and custom. As such, Plaintiff brings her claim directly against the Great Salt Bay Community School Board ("School Board") under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Because she is challenging a policy and custom, she is challenging *legislative* rather than an *executive* action, and the shock the conscience test does not apply; that test applies *only* to executive acts. Given that the right at issue is "fundamental," Defendants must prove that the Withholding Policy passes strict scrutiny.

But even if the shock the conscience test applies, Plaintiff has pleaded sufficient facts to satisfy it. Plaintiff has alleged that Defendants were deliberately indifferent to her parental rights. This deliberate indifference can be shown not only by the lack of any compelling interest on the part of the School Board to justify withholding/concealing from Plaintiff information about its actions, but also by its lack of any process or procedure for determining whether any individualized reason exists for withholding such information from a particular parent.

## STANDARD OF REVIEW

The Court must accept as true all well-pleaded facts in Plaintiff's Complaint. *Cruz-Arce v. Mgmt. Admin. Servs. Corp.*, 19 F.4th 538, 543 (1st Cir. 2021). Moreover, the Court must draw "all reasonable inferences" in Plaintiff's favor. *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Plaintiff's claim will overcome a motion to dismiss if sufficient facts are pleaded to remove the issue from the realm of pure conjecture, and where the allegations are sufficient to create a plausible case for relief. *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 66 (1st Cir. 2020). Plaintiff has done that.

**FACTUAL BACKGROUND**

The facts are simple.[1] On December 2, 2022, Plaintiff was helping clean her child's room in preparation for painting when she discovered a chest binder. Compl. ¶ 20. This discovery surprised Plaintiff, and when she asked where the undergarment came from, her child explained that it had been given to her by Defendant Samuel Roy, a social worker at the Great Salt Bay Community School ("School"). *Id*. Later, Plaintiff discovered that Defendant Roy had given her child a second chest binder simultaneously with the first. *Id*. at ¶ 23.[2] During that conversation, Defendant Roy informed Plaintiff's child that he would not inform Plaintiff, and that Plaintiff's child need not inform her, either. *Id*. at ¶ 22.

Plaintiff then contacted school officials—including Defendants Schaff and Johnston—about the situation. She learned that school officials had also been calling her child by a different name and pronouns, and that Defendants had deliberately withheld this information from Plaintiff, as well *Id*. at ¶ 26. Plaintiff was distressed after learning that school officials were recognizing her child's assertion of a different gender identity without her knowledge, given the vital importance, centrality, and intimacy of such psychological matters. Compl. ¶ 25; Answer ¶ 25.

Plaintiff next met with Defendants Schaff and Johnston on December 5, 2022 to discuss her concerns. Compl. ¶¶ 32, 33. Both expressed sympathy that she had not been notified. *Id.* That concern did not translate into any action on Defendants' part. Consequently, Plaintiff removed her child from the School on December 8, 2022. *Id*. ¶ 35.[3]

---

[1] Defendants say the "facts of this case are very much in dispute." MTD at 3. But this is irrelevant, as the Court must accept as true all well-pleaded facts. *Cruz-Arce*, 19 F.4th at 543. It is unclear then why Defendants assert a factual dispute, or why Defendants filed an answer after filing a motion to dismiss.

[2] While this Court must accept all well pleaded facts as true and as such Defendants Answer is irrelevant for purposes of contradicting Plaintiff's factual allegations, it bears noting that Defendants admit that Plaintiff's child received the chest binders from Defendant Roy. *See* Answer ¶¶ 22, 23.

[3] On May 10, 2023, the School Board unanimously approved a second-year probationary contract for Defendant Roy. May 10, 2023 GSB Agenda, https://drive.google.com/drive/folders/1NCPk7y_yOPslBDBDRL7S4AQ0pw24-Us9; https://www.youtube.com/watch?v=xut68LU1c5k at 30:22-30-55.

Plaintiff made her concerns public at a December 14, 2022, School Board meeting. *Id*. ¶ 38. Plaintiff spoke about the fact that Defendants had violated her trust by recognizing her child's assertion of a different gender identity—including by giving her child two undergarments meant to conceal breasts—and then withheld this important information from her and encouraged her child to do the same *Id*. No School Board member offered any response. *Id*. ¶ 39. Plaintiff's testimony resounded within the larger community, however. Consequently, Defendant School Board released a statement on December 19, 2022, claiming that all of its policies governing such matters comply with Maine law requiring an inclusive educational environment. It also asserted that students have a "right to privacy regardless of age," and chastised those—presumably including Plaintiff—who had publicized the incident. *See* Compl. Ex. 3 (Doc. No. 1-3), First School Board Statement.

The School Board released a second public statement on January 14, 2023. That statement more explicitly defended the actions of the individual Defendants by stating "neither the Board nor school administration are aware of any violation of policy or law which requires further action at this time." Compl. Ex. 4 (Doc. 1-4), Second School Board Statement.

On February 26, 2023, Defendant Schaff issued a Third Statement in her capacity as the School's principal. This Third Statement alleged that the Plaintiff and others supporting her misunderstood the laws and policies pertaining to gender identity, effectively asserting that the school had followed official policy in all steps relating to the incident. Compl. Ex. 5 (Doc. 1-5), Letter from Principal Kim Schaff to Members of the GSB School Community. To date, these statements are the only information the School Board has made public about the situation, except for its Motion to Dismiss and its Answer.[4]

---

[4] While the Answer is irrelevant for purposes of Defendants' Motion, it provides additional evidence that bolsters Plaintiff's claims. Defendants would certainly have access to specific information about when any meetings between

## LEGAL ARGUMENT

**I. Plaintiff's well-pleaded facts plausibly state a claim for violation of her procedural due process rights because Defendants interfered with a protected liberty interest and lacked sufficient safeguards to protect that interest.**

Courts analyze a procedural due process claim in two steps. First, courts "'ask[] whether there exists a liberty or property interest which has been interfered with by the State.'" *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 886 (1st Cir. 2010) (citation omitted). Second, they consider "'whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Id.* (citation omitted). Plaintiff's well-pleaded facts support the procedural due process claim at both steps.

**A. Plaintiff has a liberty interest in being informed about decisions made by school officials that implicate her ability to direct and control her child's education, upbringing, and healthcare.**

The Supreme Court has repeatedly held that one of the rights protected by the Fourteenth Amendment is the right of parents to direct "the care, custody, and control of their children." *Troxel*, 530 U.S. at 65. This right is a "counterpart of the responsibilities [parents] have assumed." *Lehr v. Robertson*, 463 U.S. 248, 257 (1983). As parents have a "high duty" to prepare a child for adulthood, including a child's future interpersonal relationships and civic responsibilities, *Pierce,* 268 U.S. at 535, parents have a right to act in ways necessary to discharge that responsibility. And that means a parent must be free of interference, including the intentional withholding or concealment of vital information about actions the school is taking with respect to her child.

This right does not imply the right to "to direct the policies of public schools," MTD at 18, or to control a school's curriculum. *See Parker v. Hurley*, 514 F.3d 87, 102 (1st Cir. 2008). But it

---

officials and Plaintiff about decisions made for her child were held or when they notified Plaintiff. Yet, Defendants referenced none of that information in their Answer.

does include the right to make decisions about how to instruct and guide her child on matters of psychosexual development and identity, as well as decisions about where to enroll a child in school, and in some cases even whether to enroll a child in a different school. *Id*. A parent cannot meaningfully exercise these rights when a school imposes a policy like Defendants' Withholding Policy, which actively seeks to mislead parents. Defendants did not just passively remain silent here. Defendants chose to recognize a child's assertion of a different gender identity—including by giving the child undergarments meant to flatten breasts—and then, pursuant to the Withholding Policy, kept that information from Plaintiff, and encouraged the child to do the same.

That violated Plaintiff's rights because a parent cannot meaningfully decide how to raise her child if she does not know crucial information about actions that school officials are taking with respect to a child's development and education. Nor can a parent exercise her "constitutional right to educational choice," if the school deprives her of basic information about what is going on in the school. *Pelletier v. Maine Principals' Ass'n*, 261 F. Supp.2d 10, 13 (D. Me. 2003).

In this case, the Defendants' Withholding Policy consists of actively keeping information from parents—and even encouraging children to conceal information—about affirmative steps the school is taking with respect to a child's psychosexual development. Defendants have admitted that any conscientious parent would want to know this information, Answer ¶ 25—and they must, because parents have not only a right, but a "high duty" to help a child navigate the difficult path to adulthood. *Pierce,* 268 U.S. at 535.  Parents have a "duty to raise their children to adulthood, to provide for their physical and psychological needs, and to perform the services of parenthood with reasonable diligence and 'undivided loyalty' toward their children's interests." Elizabeth S. Scott & Robert E. Scott, *Parents as Fiduciaries*, 81 Va. L. Rev. 2401, 2419 (1995). Parents cannot

7

discharge that duty when schools actively withhold information from them, as Defendants did here.

Defendants contend that "Plaintiff has no constitutionally protected right to be informed of her child's gender identity at school." MTD at 18. But, again, that is not what Plaintiff is asserting. Plaintiff is contending that she has the right not to have information about decisions actively withheld by Defendants pursuant to the Withholding Policy. Defendants assert that Plaintiff's allegations are "unsupported" by the language in its written "Guidelines." MTD at 18. But the Guidelines are not the policy Plaintiff challenges. Indeed, the Guidelines are largely irrelevant, and to the extent that they are relevant, they show why Plaintiff has stated a cause of action to survive a motion to dismiss. The Withholding Policy is a systematic across-the-board practice which is not specified, but is hinted at, in the written "Guidelines." [5] As Plaintiff alleges, Defendants decided, pursuant to the Withholding Policy, to exclude Plaintiff from any knowledge about, or participation in, their decision to recognize her child's assertion of a different gender identity by giving the child chest binders and calling the child by a different name and pronouns. If these allegations are true, they would state a cause of action for which Plaintiff is entitled to relief.

> **B.   Defendants did not provide constitutionally adequate procedures before depriving Plaintiff of her ability to make meaningful, informed decisions regarding her child's upbringing and education.**

The Withholding Policy consists of a regular pattern, custom, and practice of withholding information from parents in situations where the Defendants believe a child may be transgender—without any consideration of specific circumstances, or whether such withholding/concealment is

---

[5] As to the "Guidelines," official policy statements or written guidelines may be illuminating with respect to an official policy, but "the proper focus must be on the manner in which the state has acted: 'how and when' the alleged deprivation was effected," not on the *de jure* statements that purport to say how Defendants ought to act. *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990).

warranted by particular facts about a child or parent.[6] Even if Defendants' formal written "Guidelines" did not expressly require them to withhold and/or conceal this information from Plaintiff, the "Guidelines" certainly do not prohibit this, or establish a process for determining whether, when, or why, it is proper to withhold/conceal information from a particular parent.

Defendants' rule of withholding information of this sort from parents is inadequate by every standard courts have identified in procedural due process analysis. The Defendants used no "impartial and independent adjudicator," which is "'a fundamental ingredient of procedural due process.'" *Gorman v. Univ. of R.I.*, 837 F.2d 7, 15 (1st Cir. 1988) (citation omitted). Plaintiff had no notice that she was being denied her parental rights, let alone any "opportunity to respond, explain, [or] defend" her right to be informed and involved in this aspect of her child's life at a hearing or meeting. *Id.* at 13. And Plaintiff's interest was exceptionally weighty, thus the risk of erroneous deprivation was great. *Cf. Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (noting that a parent's "right to the companionship, care, custody, and management of his or her children is an interest far more precious than any property right," and requiring exceptional safeguards to prevent erroneous deprivation (quotation marks and citations omitted)).

These factors weigh strongly in favor of a procedural due process violation. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As for the government's interest, while school officials may arguably be justified in withholding information from parents in extreme circumstances[7], that was not the case here. And there was no process for determining whether it was.

---

[6] *Cf. Foote v. Town of Ludlow*, No. CV 22-30041-MGM, 2022 WL 18356421, at *7 (D. Mass. Dec. 14, 2022) ("it is disconcerting that school administrators or a school committee adopted and implemented a policy requiring school staff to actively hide information from parents about something of importance regarding their child.")

[7] Even this seems unlikely. If a school has reason to believe a parent will abuse a child for being transgender, its duty is to report that parent to child protection officials, not to conceal information from a parent or seek to mislead a parent about the child's well-being.

9

Instead, Defendants simply followed the Withholding Policy—an across-the-board practice of always withholding information of this sort from parents. Both facially and as applied to Plaintiff, that choice violated procedural due process.

**II.   Plaintiff's well-pleaded facts plausibly state a claim that Defendants violated her fundamental right to control and direct the education, upbringing, and healthcare decisions of her child by withholding decisions and actions taken regarding vital and intimate issues.**

Defendants violated Plaintiff's rights by withholding and even concealing from Plaintiff information about decisions Defendants made and actions Defendants took with respect to recognizing her child's transgender status. Those purposeful efforts to actively withhold information from Plaintiff interfered with Plaintiff's ability to exercise her fundamental parental rights.

The parties differ over the proper legal test for determining whether Defendant violated that right. The "history and tradition" test applies in this case rather than the "shocks the conscience" test. But Plaintiff has stated a cause of action under either test.

When a plaintiff brings a claim under 42 U.S.C. § 1983 alleging that an *executive* act violated a right protected under "substantive due process," the plaintiff must prove that the act "shock[ed] the contemporary conscience." *See Martinez v. Cui*, 608 F.3d 54, 63–64 (1st Cir. 2010) ("the shocks-the-conscience test . . . governs all substantive due process claims based on executive, as opposed to legislative, action."). But if the complained-of act is *legislative* in nature, the court should employ the traditional methods for determining the existence of an unenumerated right under the Fourteenth Amendment—which include the "history and tradition" test. *Id*.

Here, the act Plaintiff challenges is legislative in nature. Plaintiff alleges that the individual Defendants acted in accordance with the School Board's policies. True, that policy—the Withholding Policy—is unwritten. But it is nonetheless legislative, because it consists of a general

10

rule governing all cases (as opposed to an executive act, which consists of applying a general rule to a specific case). This means the shock the conscience test does not apply. But even if it did, Defendants' actions shock the contemporary conscience, and the Motion should accordingly be denied.

> **A. Plaintiff's injuries are the result of actions in accordance with the School Board's Withholding Policy, which is legislative in nature.**

Government actions are legislative in nature if they consist of general rules, regulations, or policies that govern all conduct within a specified range of circumstances. *McKinney v. Pate*, 20 F.3d 1550, 1557 n.9 (11th Cir. 1994) (discussing the difference between a legislative and executive act for purposes of determining whether the shock the conscience test applies). The Supreme Court has held that the actions of a school board can be "legislative." *Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 198–99 (1979).

In this case, Plaintiff alleges that the Defendants actions were taken in accordance with the Withholding Policy. That policy is legislative in nature because it prescribes a general rule governing Defendants' behavior in all cases. *Cf. Ross v. Oregon*, 227 U.S. 150, 163 (1913) (describing legislative actions as anything, "whether it be a constitution, a constitutional amendment, an enactment of the legislature, a by-law or ordinance of a municipal corporation, or a regulation or order of some other instrumentality of the state" which governs actions.) The Withholding Policy is unwritten, but an unwritten policy can be legislative—and can violate due process—no less than a written one. *See, e.g., O'Donnell v. Harris Cnty*, 251 F. Supp.3d 1052, 1154–55 (S.D. Tex. 2017), *aff'd* 892 F.3d 147 (5th Cir. 2018) (unwritten bail policy was legislative and violated due process); *Knox v. Lanham*, 895 F. Supp. 750, 756 (D. Md. 1995), *aff'd* 76 F.3d 377 (4th Cir. 1996) ("the unwritten policy of the Parole Commission … constitutes a 'law' for ex post facto purposes.").

As noted above, Defendants' Motion cites the school district's written "Guidelines" for supporting transgender students and contends that these do not explicitly require school officials to withhold or conceal information from parents. But the "Guidelines" are not the Withholding Policy that Plaintiff complains of. In fact, the "Guidelines" themselves state that they "are not intended to anticipate every possible situation that may occur," and that they "are intended to be interpreted in light of applicable federal and state laws and regulations, as well *as Board policies, procedures and school rules*." Compl. Exh 6, Transgender Students Guidelines at 1, (EFC 1-6) (emphasis added). In other words, these "Guidelines" are *supplements to* the Withholding Policy, and in fact, permit the policy and practice of withholding/concealment.

Because the Withholding Policy is legislative in nature, the proper analysis is for the Court to determine whether Defendants' actions satisfy strict scrutiny. The Supreme Court has repeatedly held that the Fourteenth Amendment's due process clause protects parents' "fundamental" right to direct the upbringing of their children, *Troxel*, 530 U.S. at 65, the Court must employ strict scrutiny in determining whether the Withholding Policy violates that right. *See Kenyon v. Cedeno-Rivera,* 47 F.4th 12, 24 (1st Cir. 2022). Strict scrutiny places the burden on the Defendants to show that withholding and/or concealing the information in question from the Plaintiff was narrowly tailored to advance a compelling government interest. A motion to dismiss is, of course, not the proper place for such an analysis—the point here is simply that the Plaintiff has pleaded sufficient facts to show she is plausibly entitled to judgment on that analysis.

### B. Even if the challenged actions are executive Plaintiff's well-pleaded facts are sufficient to establish the actions "shocked the conscience."

On the other hand, if the Defendants' choice to systematically withhold and conceal information from parents about actions taken with respect to children Defendant believes to be transgender qualifies as executive in nature, First Circuit precedent requires the shock the

12

conscience standard. *See Martinez* 608 F.3d at 63–64.[8] The historical recognition of rights remains relevant under that test, *id.* at 66, and here, the nature of the right violated—parental rights—militates in favor of finding that the Defendants engaged in conscience-shocking behavior. *See Lewis*, 523 U.S. at 847 n.8.

In determining whether a specific action shocks the conscience, this Circuit has said that mere negligence does not qualify as conscience-shocking, *Gonzalez-Fuentes*, 607 F.3d at 881 . For one thing, in emergencies such as police confrontations, where split-second decisions must be made, courts do not want to second-guess officers in the field. But here, officials *did* have time to engage in actual deliberations. And in such cases, the standard is higher: "the defendant may be held to have engaged in conscience-shocking activity by exercising deliberate indifference." *Id*. (internal marks and citation omitted).

Defendants here obviously had time to engage in actual deliberation. This was not a judgment call in the heat of the moment. Yet there is no indication that Defendants considered Plaintiff's right to control and direct the education and upbringing of her child when making the decisions to withhold crucially important information from Plaintiff *and encouraging her child to do the same*.

Deliberate indifference means that a government official "[knew] of the risk" to constitutional rights that his actions were posing, "and disregarded [that risk]." *Elwell v. Correia*, 585 F. Supp.3d 163, 166 (D.N.H. 2022). If Plaintiff proves her allegations that Defendants knew that they were withholding information from her **that Defendants have already conceded a conscientious parent would want to know**, Answer ¶ 25**,** and consciously disregarded the risk to

---

[8] Plaintiff preserves for appeal the argument of whether First Circuit precedent is in line with Supreme Court precedent and that the Court of Appeal should overrule cases holding that rights recognizable under the history and tradition test should be evaluated under the shock the conscience test.

her fundamental rights as a parent resulting from their choice to withhold/conceal that information, then she would be entitled to judgment.

Defendants claim they cannot be required to notify parents of these decisions (while simultaneously arguing that "Guidelines" require just that, MTD at 3), because doing so would lead to the school violating state laws against discrimination and its obligation to create a safe and secure learning environment free from bullying. *Id* at 12. These justifications for the Withholding Policy are a smoke screen. Obviously, the school is legally prohibited from discriminating against a child on account of the child's gender identity. But there is no indication or evidence that **notifying a parent** about decisions made and actions taken with respect to a child's gender identity constitutes discrimination or would lead to an unsafe learning environment. Nor did Defendants engage in any process to determine whether notifying Plaintiff would lead to such outcomes.

Defendants argue that it could possibly lead to *other students* not feeling safe to assert a gender identity at school. That is pure conjecture. Regardless, the government cannot excuse an unconstitutional act by claiming a desire to avoid potential liability for discrimination. *See Ricci v. DeStefano*, 557 U.S. 557, 592 (2009) ("[f]ear of litigation alone cannot justify an employer's reliance on race to the detriment of individuals who passed the examinations and qualified for promotions."). The government cannot use its fear of *potential* liability under one law to allow it to *consciously and intentionally* violate another.

The bottom line is that Defendants, following their Withholding Policy, gave Plaintiff's child chest binders and began calling her child by a different name and pronouns, and deliberately chose to withhold this information, and even to encouraged her child to conceal this information from Plaintiff—without any consideration of whether the circumstances warranted such efforts to mislead her, and without any consideration of Plaintiff's fundamental parental rights. That

constitutes deliberate indifference to Plaintiff's rights, and if Plaintiff's allegations are proven true, she would be entitled to judgment on that ground. Thus, the Motion should be denied.

### C. *Parker v. Hurley* is irrelevant here.

*Parker* held that while parents have a constitutional right to choose either a public or private school, the Constitution does not provide a right to "'direct how a public school teaches their child[ren].'" 514 F.3d at 102. But that is not the relief Plaintiff is seeking. Instead, she is asserting that she has **a constitutional right not to have the public school take affirmative steps to recognize her child's assertion of a different gender identity—including giving the child undergarments intended to flatten breasts so the wearer appears male—and then to deliberately and actively withhold that information from her, and encourage her child to do so.** Those actions violate Plaintiff's fundamental rights.

This action is not an effort to dictate curriculum or the internal operations of a school. Plaintiff does not even contend that the Defendants are prohibited from giving students chest binders or calling children by names and pronouns that match their gender identity rather than their sex assigned at birth. Plaintiff simply contends that the state may not actively interfere with her right to direct the upbringing of her child by deliberately withholding and/or concealing information about the actions it is taking with respect to the child's psychosexual development. A parent's right to oversee the education, upbringing, and healthcare of their children necessarily includes a right not to have the state actively hide from them information about their children's welfare that the state itself concedes a conscientious parent would rightly wish to know. Answer ¶ 25.

### III. Plaintiff's well-pleaded facts plausibly state a claim that the constitutional injuries she suffered were pursuant to a policy, pattern, practice, or custom of the School Board.

Under *Monell*, a plaintiff must plead that her constitutional injury was the result of a governmental entity's policy or custom; that it was the result of a failure to properly train staff; or that the injury has been ratified by the governmental entity. *See generally Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). Here, Plaintiff has satisfied all three requirements. She alleges that the Defendants' actions—including both their own intentional concealment and withholding of information about actions and decisions taken *and* their choice to encourage her child to conceal such information—were in accordance with the Withholding Policy.

The Complaint alleges specific facts to show that the Defendants' Withholding Policy was followed in all the actions and omissions of which she complains.

First, the School Board took no action against Samuel Roy for his decision to give Plaintiff's child chest binders, concealing this fact from Plaintiff, and to encourage Plaintiff's child to do the same. Compl. ¶ 34. In fact, the School Board recently voted to approve a second-year probationary contract with Defendant Roy.[9] The lack of discipline and renewal of the contract show that Defendant Roy's actions were in accordance with the School Board's Withholding Policy.[10] Under *Monell*, a governmental entity can be held liable in "instances where it ratifies the conduct of an employee without policymaking authority." *Craig v. Maine Sch. Admin. Dist. No. 5*, 350 F. Supp.2d 294, 297 (D. Me. 2004). A ratification claim can transfer liability to a

---

[9] On May 10, 2023, subsequent to the filing of this case, the School Board unanimously approved a second-year probationary contract for Defendant Roy.
https://drive.google.com/drive/folders/1NCPk7y_yOPslBDBDRL7S4AQ0pw24-Us9;
https://www.youtube.com/watch?v=xut68LU1c5k at 30:22-30-55. Pursuant to Fed. R. Ev. 201, Plaintiffs ask that the Court take judicial notice of this fact.
[10] If, as Defendants maintain, MTD at 2, all their policies require parental involvement, it is illogical that the Defendant School Board would not only not punish Defendant Roy, but affirmatively retain an individual who violated their policy.

governmental entity when "the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

Second, the Complaint references conversations and statements in which school officials and the School Board indicated that all policies were followed—in other words, that the withholding/concealment at issue was consistent with official policy. Compl. ¶ 34. Plaintiff also specifically alleges that the statements released by the School Board in the aftermath of Plaintiff's allegations at the December School Board meeting assert that all policies had been followed. Compl. ¶¶ 42, 43. The School Board's released statements alleging that all policies were followed throughout all incidents complained of in this case. *See* Compl. Ex. 4.

All of this substantiates Plaintiff's allegations that the Defendants' choice to withhold/conceal information was done pursuant to a regular policy—a policy she alleges is unconstitutional.

But even if the Defendants do not have a Withholding Policy, their failure to make clear to employees that withholding/concealment of such crucial information violates school policies is *itself* a violation of Plaintiff's rights. Under *Monell*, a government entity may be held liable for failing to train its employees if that results in a violation of constitutional rights. *See City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (holding that a failure to train claim can succeed when the need to train was "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."). Here, there was an obvious need to train employees about the constitutional requirements of parental rights. Given the fundamentality of parental rights and

17

the likelihood that parent and student wishes may clash, the need to train school employees about the Supreme Court's parental rights precedent was obvious.

Plaintiff has alleged sufficient facts at this stage (without access to communications and training materials used by the School Board to train staff) that the acts and omissions of the Defendants were in accordance with the School Board's Withholding Policy or its failure to train.

### IV. The claims against the individual defendants sued in their "official capacity" should not be dismissed.

As Plaintiff has plausibly pleaded a violation of her constitutional rights, the individual Defendants in the suit are required to establish the predicate for a municipal liability claim: a constitutional injury by a government employee. *Kennedy v. Town of Billerica*, 617 F.3d 520, 531 (1st Cir. 2010).

This Circuit has recognized the benefits of having individual government officials in a suit like this in addition to the entity defendant. In *Wilson v. Town of Mendon*, the court considered whether a governmental entity could be held liable under *Monell* for the actions of an unnamed government employee. 294 F.3d. 1, 7–8 (1st Cir. 2002). The court ultimately held that a Plaintiff's decision to *not* name individual Defendants did not eliminate their *Monell* claim. *Id*. at 7. But the court also said that a Plaintiff has a better opportunity to prove a case when the government employee who committed the violation is a party amenable to the full powers of discovery, which is why plaintiffs rarely proceed *only* against a governmental entity. *Id*. at 8. In short, plaintiffs can proceed against a governmental entity directly, but that is a choice left to the plaintiff, not to the individual defendants.

Further, Defendants here do not allege any harm will come to the entity or the individual Defendants sued in their official capacities if the suit proceeds against both. Defendants claim it is redundant, but that is not enough for dismissal—especially because if the individual Defendants

were dismissed, Plaintiff would be forced to prove the underlying constitutional violation without the efficient discovery procedures that apply if they are named Defendants.

This Court should deny Defendants' request to dismiss the individual Defendants sued in their official capacity, especially as they do not allege that naming Defendants is insufficient for purposes of Fed. R. Civ. Pro. 12(b)(6).

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss Plaintiff's Complaint. But if the Court grants the Motion, Plaintiff requests leave to amend her Complaint.

Respectfully submitted on June 30, 2023.

/s/ *Brett D. Baber*
Brett D. Baber (Maine Bar No. 3143)
**LANHAM BLACKWEEL & BABER, PA**
133 Broadway
Bangor, ME 04401
Telephone: (207) 942-2898
bbaber@lanhamblackwell.com

/s/ *Adam C. Shelton*
Adam C. Shelton
(Appearing Pro Hac Vice)
Scharf-Norton Center for
Constitutional Litigation at the
**GOLDWATER INSTITUTE**
500 E. Coronado Road
Phoenix, Arizona 85004
Telephone: (602) 462-5000
litigation@goldwaterinstitute.org

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

   I hereby certify that on June 30, 2023 I served the foregoing document on Defendants' counsel via the Court's ECF system:

Melissa A. Hewey
Susan M. Weidner
DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
mhewey@dwmlaw.com
sweidner@dwmlaw.com
*Counsel for Defendants*


/s/ *Kris Schlott*
Kris Schlott, Paralegal